UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| BOBBIE BROWN,<br><br>       Plaintiff,<br><br>v.<br><br>BRISTOL-MYERS SQUIBB COMPANY, ASTRAZENECA PHARMACEUTICALS LP, and MCKESSON CORPORATION,<br><br>       Defendants. | Case No.:<br><br><br>**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff BOBBIE BROWN, by and through Plaintiff's attorneys, and alleges against Defendants Bristol-Myers Squibb Company, AstraZeneca Pharmaceuticals, LP, and McKesson Corporation (collectively "Defendants") as follows:

## I. INTRODUCTION

1. This is an action for damages relating to Defendants' design, manufacture, sale, marketing, advertising, promotion, labeling, packaging, and distribution of their drug Saxagliptin. Defendants sell their Saxagliptin drug under the brand names Onglyza and Kombiglyze XR. Saxagliptin, in any of its forms or products, including Onglyza and Kombiglyze XR, shall herein be referred to as "Saxagliptin."

2. Saxagliptin is prescribed to help lower blood sugar levels in persons with type 2 diabetes mellitus.

3. The use of Saxagliptin can cause heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions.

4. Plaintiff ingested Saxagliptin, and as a result of use of the drug suffered injuries.

## II. PARTIES

5. At all times relevant to this action, Plaintiff was a citizen of the State of Louisiana and was a resident of Plaquemine, Louisiana.

1

6. Plaintiff ingested Saxagliptin from approximately March 2012 to November 2016, resulting in injuries, including myocardial infarction.

7. Defendant Bristol-Myers Squibb Company ("BMS") is a Delaware corporation with its principal place of business at 345 Park Ave., New York, NY 10154. At all relevant times, BMS has conducted business and derived substantial revenue from its manufacturing, advertising, distributing, selling and marketing of Saxagliptin within the State of Louisiana.

8. Defendant AstraZeneca Pharmaceuticals LP ("AZ") is a Delaware limited partnership with its principal place of business at 1800 Concord Pike, Wilmington, DE 19850. At all relevant times, AZ has conducted business and derived substantial revenue from its manufacturing, advertising, distributing, selling and marketing of Saxagliptin within the State of Louisiana.

9. Defendant McKesson Corporation ("McKesson") is a Delaware corporation with its principal place of business at One Post Street, San Francisco, California 94104. At all relevant times, McKesson has conducted business and derived substantial revenue from its manufacturing, advertising, distributing, selling and marketing of Saxagliptin within the State of Louisiana.

10. At all relevant times, each Defendant acted in all aspects as the agent and alter ego of each other.

11. At all relevant times, Defendants acted in concert with one another to fraudulently convey false and misleading information concerning the safety and efficacy of Saxagliptin and to conceal the risks of serious adverse events, including heart failure, congestive heart failure, cardiac failure, death from heart failure and other adverse effects associated with Saxagliptin from the public, Plaintiff, physicians, and other healthcare providers. These concerted efforts resulted in significant harm to those treated with Saxagliptin, including Plaintiff. But for the actions of Defendants, individually, jointly, and in concert with one another, Plaintiff would not have ingested Saxagliptin.

12. At all times alleged herein, Defendants were engaged in the business of, or were successors-in-interest to entities engaged in the business of, researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting,

2

distributing, marketing, labeling, promoting, packaging, and/or advertising for sale or selling Saxagliptin.

13. At all times alleged herein, Defendants were authorized to conduct or engage in business within the State of Louisiana and supplied Saxagliptin within the State of Louisiana. Defendants received financial benefit and profits as a result of designing, manufacturing, marketing, advertising, selling and distributing Saxagliptin within the State of Louisiana.

14. The combined acts and/or omissions of each Defendant resulted in indivisible injuries to each Plaintiff. Each of the above-named Defendants is a joint tortfeasor and/or co-conspirator and is jointly and severally liable to Plaintiff for the negligent acts and omissions alleged herein. Each of the above-named Defendants directed, authorized or ratified the conduct of each and every other Defendant.

### III. JURISDICTION AND VENUE

15. Jurisdiction is proper in this court pursuant to 28 USC § 1332 as complete diversity of citizenship exists between Plaintiff and Defendants and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

16. This Court has jurisdiction over Defendants because they have conducted substantial business in the State of Louisiana. Further, the Court has jurisdiction over Defendants because Defendants have committed a tort in whole or in part in the State of Louisiana and have regular and continuing contacts with the State of Louisiana.

17. In addition, venue of this case is proper in the State of Louisiana pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

### IV. FACTUAL ALLEGATIONS

18. Type 2 diabetes mellitus is a chronic disease, characterized by insulin resistance and deficient insulin secretion leading to high blood sugar levels and/or hyperglycemia. Type 2 diabetics have an increased risk of cardiovascular disease, which is the leading cause of morbidity and mortality in the patient population. Therefore, it is critical that drugs developed to allegedly help prevent type 2 diabetes do not increase the risk of cardiovascular adverse events in

3

users. With full knowledge of the susceptibility of type 2 diabetics to cardiovascular related adverse events, Defendants developed their drugs Onglyza and Kombiglyze XR to market and sell them to type 2 diabetics to allegedly lower adverse complications associated with type 2 diabetes.

19.     Saxagliptin works by inhibiting the proteolytic activity of DPP4, thereby potentiating the action of Glucagon-like peptide-1 (GLP-1), an antihyperglycemic hormone, known as an incretin. This induces glucose-dependent stimulation of insulin secretion while suppressing glucagon secretion, which may help Saxagliptin users lower their Hemoglobin A1c.

20.     DPP4-inhibitors, including Saxagliptin, inhibit natural enzymes from cleaving, or stopping, the endogenous GLP-1, which enables the stimulation of insulin to continue longer than what naturally occurs after meals in the postprandial state. Endogenous GLP-1's half-life is approximately two minutes without Saxagliptin exposure, but survives for at least three hours during Saxagliptin exposure. Therefore, Saxagliptin manipulates the natural biological incretin effect by enabling the process to continue for an exponentially greater period of time than what the human body has adapted as a sufficient and safe period of time. At no time during the development of its Saxagliptin drugs did Defendants perform adequate studies to determine if their drug, and its drastic alterations of the natural incretin hormone cycle, may cause increased risks of cardiovascular related adverse events. Such studies are essential when developing, and then marketing, diabetic drugs to individuals already at an increased cardiovascular risk.

21.     In December 2008, with knowledge of the increased cardiovascular risk type 2 diabetics suffer from, the FDA issued important guidance regarding this topic to companies developing anti-diabetic drugs, including Defendants. The FDA's memorandum, entitled Final Guidance for Industry, *Diabetes Mellitus: Evaluating Cardiovascular Risk in New Antidiabetic Therapies to Treat Type 2 Diabetes,* stated applicants of new anti-diabetic medications for the treatment of type 2 diabetes should demonstrate their products are not associated with an unacceptable increase in cardiovascular risk. Despite this guidance being issued during the development of Defendants' drugs, Defendants failed to perform adequate clinical trials to determine if their drugs created such an increased risk. Instead of adequately assessing the

potential, and now established, significant risk of myocardial infarction, heart failure, congestive heart failure, cardiac failure, and death related to those events, prior to marketing and selling Saxagliptin nationwide to millions of type 2 diabetics, Defendants ignored patient safety and sold Saxagliptin before studying the risks. Defendants marketed and sold Saxagliptin for nearly five years before completing an adequately powered and designed study of the risks of myocardial infarction, heart failure, congestive heart failure, cardiac failure, and death related to those events.

22. On July 31, 2009 Defendants began marketing Onglyza. On November 5, 2010, Defendants began marketing Kombiglyze XR. Defendants marketed both drugs as treatments for type 2 diabetes and agents to help reduce adverse complications associated with the disease. At no time did Defendants perform adequate studies or adequately warn that Onglyza and Kombiglyze XR increased the risk of cardiovascular related adverse events.

23. After Defendants began selling and making substantial profits off their drugs Onglyza and Kombiglyze XR, Defendants finally conducted what the FDA guidance recommended back in December 2008 – a Cardiovascular Outcome Trial ("CVOT") for Saxagliptin.

24. The CVOT for Saxagliptin entitled "Saxagliptin Assessment of Vascular Outcomes Recorded in Patients with Diabetes Mellitus — Thrombolysis in Myocardial Infarction 53" (SAVOR-TIMI 53 or more simply "SAVOR") found Saxagliptin users had a statistically significant increased risk of being hospitalized due to heart failure.

25. After receiving and reviewing the disturbing findings from the SAVOR trial, the FDA requested the raw clinical trial data, free from manipulation by Defendants, and performed its own analysis of the SAVOR data. Following the FDA's detailed analysis and review of the SAVOR safety signal for hospitalization for heart failure, the FDA's Endocrinologic and Metabolic Drugs Advisory Committee convened and voted 14 to 1 for the FDA to order Defendants to add a heart failure warning to its Saxagliptin drugs. The single member who voted against adding the warning stated a warning was insufficient and the drug should instead be

5

withdrawn from the US market.[1] Despite the SAVOR findings and despite the FDA Advisory Committee voting to add a warning (or remove the drugs from the market), Defendants failed and continue to fail to warn.

26. In addition to Defendants refusing and failing to warn of the risks of heart failure, congestive heart failure, cardiac failure and death, Defendants' Saxagliptin drugs lack any benefit sufficient to tolerate the risks posed by its use because other anti-diabetes drugs are available that do not carry the increased cardiac risks of Saxagliptin.

27. Defendants, with knowledge of the true relationship between use of Saxagliptin and myocardial infarction, heart failure, congestive heart failure, cardiac failure, and death related to those events, promoted and continue to promote Saxagliptin as a safe and effective treatment for type 2 diabetes mellitus.

28. Defendants over-promoted Saxagliptin and under-warned about Saxagliptin's risks through various avenues including, but not limited to, the following:

   a. in print marketing, advertising, and promotional materials;
   b. on Defendant-owned, controlled, or supported websites and blogs;
   c. in materials and advertisements to Plaintiff and consumers stating the use of Saxagliptin is safe; and
   d. in promoting Saxagliptin to doctors, clinics, and users as being safer than (or as safe as) other drugs for the treatment of type 2 diabetes mellitus.

29. At no time did Defendants perform adequate safety testing on Saxagliptin prior to marketing their drugs to the American public and failed to do so until performing the SAVOR trial.

30. Despite the findings of the SAVOR trial, Defendants still have not undertaken efforts to change the labels and reference materials for Saxagliptin to include a reference or warning regarding myocardial infarction, heart failure, congestive heart failure, cardiac failure, and death related to those events.

---

[1] Diabetes in Control (April 17, 2015) "FDA Panel Recommends New CV Safety Warnings on Onglyza and Nesina DPP-4s," available from:
http://www.diabetesincontrol.com/articles/diabetes-news/17836-fda-panel-recommends-new-cv-safety-warnings-on-onglyza-and-nesina-dpp-4s-

## IV.    PLAINTIFF'S USE OF SAXAGLIPTIN

31.    Plaintiff Bobbie Brown was prescribed and ingested Saxagliptin between approximately March 2012 and November 2016.

32.    On information and belief, Plaintiff used Saxagliptin manufactured, packaged, marketed, sold and/or distributed by Defendants. The Saxagliptin reached Plaintiff without substantial change in the drug's condition.

33.    On information and belief, while using Saxagliptin, and as a direct and proximate result thereof, Plaintiff developed serious and/or permanent adverse effects, including but not limited to a myocardial infarction, and was hospitalized in or around June 2015.

34.    As a result of said injuries, Plaintiff suffered significant bodily and mental injuries, pain and suffering, mental anguish, disfigurement, embarrassment, inconvenience, loss of earnings and earning capacity and have and will incur past and future medical expenses.

35.    At all relevant times, Defendants had knowledge that there was a significant increased risk of adverse events associated with Saxagliptin including myocardial infarction, heart failure, congestive heart failure, cardiac failure, and death related to those events, and despite this knowledge Defendants continued to manufacture, market, distribute, sell and profit from sales of Saxagliptin.

36.    Despite such knowledge, Defendants knowingly, purposely and deliberately failed to adequately warn Plaintiff, patients, consumers, medical providers and the public of the increased risk of serious injury associated with using Saxagliptin including but not limited to myocardial infarction, heart failure, congestive heart failure, cardiac failure, and death related to those events.

37.    On information and belief, Plaintiff's prescribing physicians would not have prescribed Saxagliptin to Plaintiff, would have changed the way in which they treated Plaintiff's relevant conditions, changed the way they warned Plaintiff about the signs and symptoms of serious adverse effects of Saxagliptin, and discussed with Plaintiff the true risks of myocardial infarction, heart failure, congestive heart failure, cardiac failure, and death related to those

events, and other serious adverse events had Defendants provided said physicians with an appropriate and adequate warning regarding the risks associated with the use of Saxagliptin.

38. On information and belief, Plaintiff's prescribing health care providers were unaware of the true degree, incidence, and risk of myocardial infarction, heart failure, congestive heart failure, cardiac failure, and death related to those events associated with the use of Saxagliptin, and, if they had been informed, would have used and prescribed alternative therapies to Plaintiff.

39. As a direct and proximate result of Defendants' conduct, Plaintiff suffered injuries, including but not limited to a myocardial infarction, which resulted in damages to Plaintiff.

40. As a direct and proximate result of Defendants' conduct, Plaintiff incurred obligations and expenses for medical care, testing and treatment. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of income, wages, profits and commissions, diminishment of earning potential, and other pecuniary losses.

## V. **DELAYED DISCOVERY**

41. Defendants, through their affirmative misrepresentations and omissions, actively concealed from the Plaintiff and Plaintiff's physicians and healthcare providers the true and significant risks associated with Saxagliptin.

42. As a result of Defendants' actions, Plaintiff and Plaintiff's physicians and healthcare providers were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiff had been exposed to the risks identified in this Complaint, and that those risks were the result of Defendants' acts, omissions, and misrepresentations.

43. No limitations period ought to accrue until such time as Plaintiff knew or reasonably should have known of some causal connection between the use of Saxagliptin and the harm suffered as a result. As such, Plaintiff hereby invokes the discovery rule based on the fact that this Complaint is filed well within the statutory period after Plaintiff knew or should have known the facts alleged herein.

44. Additionally, the accrual and running of any applicable statute of limitations has been tolled by reason of Defendants' fraudulent concealment.

45. Additionally, each Defendant is equitably estopped from asserting any limitations defense by virtue of its fraudulent concealment and other misconduct as described in this Complaint.

## VI. LIABILITY UNDER THE LOUISIANA PRODUCTS LIABILITY ACT

46. Plaintiff repeats, reiterates, and re-alleges all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

47. Under the Louisiana Products Liability Act, Plaintiff shows that the serious risk of developing myocardial infarction, heart failure, congestive heart failure, cardiac failure, and other injuries are the direct and proximate result of breaches of obligations owed by Defendants to Plaintiff, including defects in design, marketing, manufacture, distribution, instructions and warnings by Defendants, which breaches and defects are listed more particularly, but not exclusively, as follows:

   a. Failure to instruct and/or warn of the serious risk of developing myocardial infarction, heart failure, congestive heart failure, cardiac failure, and other injuries;

   b. Failure to adequately instruct and/or warn healthcare providers, including those healthcare providers who administered Saxagliptin to Plaintiff, of the serious risk of developing myocardial infarction, heart failure, congestive heart failure, cardiac failure, and other injuries;

   c. Manufacturing, producing, promotion, formulating, creating, and/or designing Saxagliptin without adequately testing it;

   d. Failing to provide adequate warning of the dangers associated with Saxagliptin;

   e. The defects in designing, formulating, researching, developing, manufacturing, marketing, promoting and selling a medication when it knew or reasonably should have known of the propensity to cause myocardial infarction, heart failure, congestive heart failure, cardiac failure, and other injuries;

   f. Defendants' liability under the Louisiana Products Liability Act as a result of its design, development, manufacture, marketing, and sale of a medication which is defective and unreasonably dangerous for the risk of developing myocardial infarction, heart failure, congestive heart failure, cardiac failure, and other injuries;

9

g. The continued production and sale of Saxagliptin given the propensity of the medication to cause myocardial infarction, heart failure, congestive heart failure, cardiac failure, and other injuries;

h. Providing inaccurate labeling and inadequate warnings and instructions;

i. Utilizing testing methods which were not accurate, sensitive, specific, and/or reproducible;

j. Other breaches and defects which may be shown through discovery or at trial; and

k. Generally, the failure of Defendants to act with the required degree of care commensurate with the existing situation.

## CAUSES OF ACTION

### COUNT I

**Design Defect under LSA-RS 9:2800.56**

48. Plaintiff repeats, reiterates, and re-alleges all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

49. At all times relevant, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Saxagliptin as hereinabove described that was used by Plaintiff.

50. Saxagliptin was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendants.

51. At those times, Saxagliptin was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, and in particular, Plaintiff.

52. The Saxagliptin designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of Saxagliptin.

53. The Saxagliptin designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective in design and/or formulation, in that, when it left the hands of Defendants, manufacturers, and/or suppliers, it was unreasonably

dangerous, and it was more dangerous and posed risk greater than an ordinary consumer would expect.

54. At all times relevant, Saxagliptin was in a defective condition and unsafe, and Defendants knew or had reason to know that Saxagliptin was defective and unsafe, especially when used in the form and manner as provided by Defendants.

55. Defendants knew, or should have known, that at all times relevant, Saxagliptin was in a defective condition and was and is inherently dangerous and unsafe.

56. At the time of Plaintiff's use of Saxagliptin, the Saxagliptin was being used for the purposes and in a manner normally intended, namely for the treatment of type 2 diabetes.

57. Defendants with this knowledge voluntarily designed Saxagliptin in a dangerous condition for use by the public, and in particular, Plaintiff.

58. Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

59. In creating Saxagliptin, Defendants created a product that was and is unreasonably dangerous for its normal, intended use, and a safer alternative design existed.

60. The Saxagliptin designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was manufactured defectively and was unreasonably dangerous to its intended users.

61. The Saxagliptin designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants reached the intended users in the same defective and unreasonably dangerous condition in which Defendants' Saxagliptin was manufactured.

62. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product that created an unreasonable risk to the health of consumers and to Plaintiff in particular; and Defendants are therefore liable for the injuries sustained by Plaintiff in accordance with Louisiana Products Liability Act.

63. At the time Defendants' product left their control, there was a practical, technically feasible, and safer alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of Saxagliptin. This was

11

demonstrated by the existence of other type 2 diabetes medications which had a more established safety profile and a considerably lower cardiac risk profile, including certain other DPP-4 inhibitors, the same class of diabetes drug to which Saxagliptin belongs.

64.     Plaintiff and Plaintiff's physicians could not, by the exercise of reasonable care, have discovered Saxagliptin's defects mentioned herein and perceived its danger.

65.     The Saxagliptin designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that the product created a risk of serious and dangerous side effects, including disfigurement as well as other severe and personal injuries that are permanent and lasting in nature, and Defendants failed to adequately warn of these risks.

66.     The Saxagliptin designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate warnings and/or inadequate testing.

67.     The Saxagliptin designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate postmarketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, including myocardial infarction, heart failure, congestive heart failure, cardiac failure, and death, as well as other severe and permanent health consequences from Saxagliptin, they failed to provide adequate warnings to users or consumers of the product, and they continued to improperly advertise, market, and/or promote Saxagliptin.

68.     By reason of the foregoing, Defendants are liable to Plaintiff for the manufacturing, marketing, promoting, distribution, and selling of Saxagliptin, a defective product.

69.     Defendants' defective design, manufacturing defect, and inadequate warnings of Saxagliptin were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

70.     The defects in Defendants' drug Saxagliptin were substantial and contributing factors in causing Plaintiff's injuries.

71. Due to the unreasonably dangerous conditions of Saxagliptin, Defendants are liable to Plaintiff.

72. As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including, but not limited to: past and future medical expenses; future psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; myocardial infarction, and congestive heart failure; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## COUNT II

## FAILURE TO WARN

### Inadequate Warning Under LSA-RS 9:2800.57

73. Plaintiff repeats, reiterates, and re-alleges all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

74. Saxagliptin was unreasonably dangerous, even when used in a foreseeable manner as designed and intended by Defendants.

75. At all relevant and material times, Defendants designed, manufactured, packaged, marketed, advertised, distributed, and sold Saxagliptin, placing the products into the stream of commerce for sale to, and use by, members of the public, including the Saxagliptin used by Plaintiff.

76. At all relevant and material times, Saxagliptin was designed, manufactured, packaged, marketed, advertised, distributed, and sold by Defendants in a defective and unreasonably dangerous condition.

77. The Saxagliptin manufactured by Defendants reached Plaintiff without substantial change and was ingested as directed. The Saxagliptin was defective and unreasonably dangerous when it entered into the stream of commerce and when used by Plaintiff.

78. The Plaintiff was administered the Saxagliptin for its intended purpose.

79. Plaintiff used Saxagliptin in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants.

80. Defendants failed to warn and/or adequately warn Plaintiff, consumers, physicians, and healthcare professionals of the increased health risks associated with using Saxagliptin.

81. Plaintiff and Plaintiff's healthcare providers did not have the same knowledge as Defendants and no adequate warning was communicated to them.

82. The Plaintiff could not have discovered any defect in the Saxagliptin through the exercise of reasonable care.

83. Defendants, as manufacturers of Saxagliptin, are held to the level of knowledge of an expert in the field, and further, Defendants knew or should have known that warnings and other clinically relevant information and data which they distributed regarding the risks of injuries and death associated with the use of Saxagliptin was incomplete and inadequate.

84. Plaintiff did not have the same knowledge as Defendants and no adequate warning or other clinically relevant information and data was communicated to Plaintiff or to Plaintiff's treating physicians. The warnings given by Defendants were inaccurate, unclear, ambiguous, and/or incomplete.

85. Defendants had a continuing duty to provide consumers, including Plaintiff, and Plaintiff's physicians with warnings and other clinically relevant information and data regarding the risks and dangers associated with Saxagliptin, as it became or could have become available to Defendants.

86. Defendants marketed, promoted, distributed and sold unreasonably dangerous and defective prescription Saxagliptin to health care providers empowered to prescribe and dispense to consumers, including Plaintiff, without adequate warnings and other clinically relevant information and data. Through both omissions and affirmative misstatements, Defendants misled the medical community about the risk/benefit balance of Saxagliptin, which resulted in injury to Plaintiff.

87. Defendants knew or should have known that Saxagliptin caused unreasonable and dangerous side effects and they continued to promote and market Saxagliptin without stating safer and more or equally effective alternative drug products existed and/or providing adequate clinically relevant information and data.

88. Defendants knew or should have known that consumers, including Plaintiff, would foreseeably and needlessly suffer injury or death as a result of Defendants' conduct.

89. Defendants failed to provide timely and adequate warnings to physicians, pharmacies, and consumers, including Plaintiff and to Plaintiff's intermediary physicians, in at least the following ways:

    a. Defendants failed to include adequate warnings and/or provide adequate clinically relevant information and data that would alert Plaintiff's physicians to the dangerous risks of Saxagliptin including, among other things, their tendency to increase the risk of, and/or cause, myocardial infarction, heart failure, congestive heart failure, cardiac failure, and death related to those events;

    b. Defendants failed to inform Plaintiff and Plaintiff's physicians that Saxigliptin had not been adequately tested to determine the full extent of the safety risks associated with use of the product;

    c. Defendants failed to provide adequate post-marketing warnings and instructions after Defendants knew or should have known of the significant risks of myocardial infarction, heart failure, congestive heart failure, cardiac failure, and death related to those events associated with use of Saxagliptin; and

    d. Defendants continued to aggressively promote and sell Saxagliptin even after they knew or should have known of the unreasonable risks of developing heart failure, cardiac failure, and death related to those events from ingestion of Saxagliptin.

90. Defendants and each of them had a duty to warn the FDA, the medical community, Plaintiff, and Plaintiff's physicians about the increased risks of injury but failed to do so.

91. Defendants had a duty and obligation to provide Plaintiff and Plaintiff's physicians with adequate clinically relevant information and data and warnings regarding the

adverse health risks associated with exposure to Saxagliptin, and/or that there existed safer and more or equally effective alternative drug products, but failed to do so.

92. By failing to provide Plaintiff and Plaintiff's physicians with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with exposure to Saxagliptin, and/or that there existed safer and more or equally effective alternative drug products, Defendants breached their duty of reasonable care and safety.

93. Defendants' actions described above were performed willfully, intentionally, and with reckless disregard of the life and safety of the Plaintiff and the public.

94. As a direct and proximate result of the actions and inactions of Defendants as set forth above, Plaintiff sustained injuries and damages.

## COUNT III

### (Breach of Warranty in Redhibition)

95. Plaintiff repeats, reiterates, and re-alleges all paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

96. Saxagliptin contains a vice or defect which renders it useless or its use so inconvenient that consumers would not have purchased it had they known about the vice or defect.

97. Pursuant to Louisiana Civil code article 2520, a seller warrants the buyer against redhibitory defects, or vices, in the thing sold. Saxagliptin, which was sold and promoted by Defendants, possesses a redhibitory defect because it is unreasonably dangerous, as described above, which renders Saxagliptin useless or so inconvenient that it must be presumed that Plaintiff would not have bought Saxagliptin had the defects been known.

98. Defendants were aware of the substantial risks of myocardial infarction and congestive heart failure associated with Saxagliptin but failed to fully disclose those risks to Plaintiff.

99. In accordance with Louisiana Civil Code article 2545, Defendants, as the manufacturers, distributors, and sellers of Saxagliptin, are deemed to be aware of its redhibitory defects.

16

100. Had Plaintiff been made aware of the defects contained in Saxagliptin, Plaintiff would not have purchased Saxagliptin. This characteristic rendered Saxagliptin unfit for its intended purposes.

101. Defendants are liable to Plaintiff under the theory of redhibition as a consequence of the sale to Plaintiff of a product unfit for its intended use.

102. Plaintiff is entitled to the return of purchase price paid for Saxagliptin, including, but not limited to, insurance co-payments, interest on these amounts from the date of purchase, attorneys' fees and costs, pecuniary and non-pecuniary damages, as well as any other legal and equitable relief to which Plaintiff may be entitled.

103. As a result of the aforementioned breach of obligation by Defendants, Plaintiff suffered and continues to suffer from the following items of damage, all past, present, and future, for which she is entitled to be compensated by Defendants, in solido, in an amount which is just and reasonable:

  a. Medical and related expenses;
  b. Physical injury and disability;
  c. Physical pain and suffering;
  d. Mental anguish and distress;
  e. Loss of earnings;
  f. Impairment to earning capacity;
  g. Loss of enjoyment of life; and
  h. Other items of damage which may be shown through discovery or at trial.

104. By reason of the foregoing, Plaintiff demands judgment against each Defendant, individually, jointly and severally for compensatory damages in a sum in excess of $75,000.00, together with interest, costs of suit, and all such other and further relief as the Court deems proper.

## **PRAYER FOR RELIEF**

So far as the law and this Court allows, Plaintiff demands judgment against each Defendant on each count as follows:

a. All available compensatory damages for the described losses with respect to each cause of action;

b. Past and future medical expenses, as well as the cost associated with past and future life care;

c. Past and future lost wages and loss of earning capacity;

d. Past and future emotional distress;

e. Consequential damages;

f. All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

g. All damages wrongful death damages permitted by law, where applicable;

h. Disgorgement of profits obtained through unjust enrichment;

i. Restitution;

j. Reasonable attorneys' fees where recoverable;

k. Costs of this action;

l. Pre-judgment and all other interest recoverable; and

m. Such other additional and further relief as Plaintiff may be entitled to in law or in equity.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

PENDLEY, BAUDIN & COFFIN, L.L.P.

Dated: January 18, 2017

/s/ Christopher L. Coffin
Christopher L. Coffin (LA Bar # 27902)
Nicholas R. Rockforte (LA Bar # 31305)
Jessica A. Perez (LA Bar # 34024)
Pendley, Baudin & Coffin, L.L.P
1515 Poydras Street, Suite 1400
New Orleans, LA 70112
Telephone: 504-355-0086
Facsimile: 504-523-0699
ccoffin@pbclawfirm.com
nrockforte@pbclawfirm.com
jperez@pbclawfirm.com

and

Michael K. Johnson (MN Bar # 258696)  
Rolf T. Fiebiger (MN Bar # 391138)  
Johnson Becker, PLLC  
444 Cedar Street, Suite 1800  
St. Paul, MN 55101  
Telephone: 612-436-1812  
Facsimile: 612-436-1801  
<u>mjohnson@johnsonbecker.com</u>  
<u>rfiebiger@johnsonbecker.com</u>